## IN THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF ILLINOIS EASTERN DIVISION

US FOODS, INC., a Delaware corporation,   )
   )
      Plaintiff,   )   Case No. 22-cv-06759
   )
      v.   )   Judge John Robert Blakey
   )
THE TURKEY LEG HUT & COMPANY   )
LLC, a Texas limited liability company,   )
and NAKIA PRICE, an individual,   )
   )
      Defendants.   )

## MEMORANDUM OPINION AND ORDER

### I.  Introduction

Plaintiff US Foods, Inc. ("US Foods") sued Defendants, The Turkey Leg Hut & Company LLC ("Turkey Leg") and Nakia Price, bringing claims under the Perishable Agricultural Commodities Act ("PACA") and various state law claims. [1]. Plaintiff now moves for summary judgment on its claims against Defendant Price for breach of guaranty (Count V), and unlawful dissipation of trust assets by an officer (Count VI). [74]. For the reasons explained below, this Court GRANTS Plaintiff's motion for summary judgment.

### II.  Background

US Foods, a foodservice distributor, and Turkey Leg, a Texas restaurant, entered into an agreement on September 17, 2020 under which US Foods would supply Turkey Leg with perishable agricultural commodities pursuant to PACA ("Produce"), and other non-PACA foods and services. [76] ¶ 1. In exchange, Turkey

Leg would timely pay US Foods for its invoices. *Id.* Under the Agreement, Turkey Leg also agreed to pay 1.5% interest per month on any amount past due, and to pay all costs, expenses, and fees, including attorneys' fees, which may be incurred by US Foods in enforcing or protecting its rights under the Agreement. *Id.* ¶¶ 5, 6.

Nakia Price, Turkey Leg's owner and principal, signed the Agreement on behalf of Turkey Leg and also executed a personal guaranty ("Guaranty"). *Id.* ¶¶ 2, 7. Under the Guaranty, Price "personally and unconditionally" guaranteed payment of all amounts Turkey Leg owed to US Foods. *Id.* ¶ 8. In the event of Turkey Leg's default, US Foods could also proceed directly against Price without first exhausting other remedies. *Id.* From May 2022 to September 2022, Turkey Leg ordered produce and non-PACA goods from US Foods, which US Foods shipped and delivered. *Id.* ¶ 12. In accordance with PACA, US Foods sold its produce subject to a statutory trust, where US Foods would retain a trust claim over all produce sold to Turkey Leg, until full payment was received. *Id.* ¶ 17.

From May 2022 through September 2022, Turkey Leg ordered produce from US Foods, and US Foods delivered that produce to Turkey Leg; yet, during this time, Turkey Leg failed to pay US Foods $82,548.07 for produce and $913,937.77 for non-PACA products.[1] *Id.* ¶¶ 16, 20. Consequently, on June 30, 2022, US Foods sent Defendants its *Notice of Intent to Preserve and Enforce Trust Benefits Under the Perishable Agricultural Commodities* ("PACA Notice"). *Id.* ¶ 18. In the notice, US

---

[1] Turkey Leg initially ordered and failed to pay for $317,831.99 worth of proprietary products, but US Foods was able to mitigate its damages by selling $248,446.74 of those items, leaving a balance of $69,385.25. [76] ¶ 21. Thus, the amount owed, $69,385.25, consists of proprietary products Turkey Leg specially ordered, which generally cannot be resold in the market. *Id.*

Foods notified Defendants of their intent to preserve trust benefits under PACA in light of the unpaid invoices for Produce, and demanded payment in full of all amounts owed. *Id.* Defendants did not respond or make payment. *Id.* ¶ 19.

US Foods then filed this suit on December 2, 2022. [1].

During litigation, Turkey Leg filed a petition in bankruptcy under Chapter 11 of the United States Bankruptcy Code. [54], [76] ¶ 26. The Bankruptcy Court converted the case to one under Chapter 7 of the Bankruptcy Code, eliminating the possibility of any repayment plan for Turkey Leg to repay creditors like US Foods, [72]; as a result, US Foods now moves for summary judgment against Price, who was not included in the Bankruptcy petition. [74].

Just before US Foods filed its summary judgment motion, Price's attorney filed a motion to withdraw. [73]. Based upon Price's representations that she planned to secure new counsel, the Court granted the motion and ordered that her new counsel file an appearance by November 1, 2024. [79]. The Court also ordered that, "if for any reason new counsel could not file an appearance, Ms. Price shall immediately email the Courtroom Deputy as well as Plaintiff's counsel to set briefing on the motion for summary judgment and for a new hearing date." *Id.* But Price failed to hire a new attorney; nor did she email the Courtroom Deputy as ordered.

On November 8, 2024, the Court issued another order, instructing Price to respond to Plaintiff's motion for summary judgment by December 20, 2024, a generous date, intended to give Price additional time to secure counsel. [80]. Yet Price again failed to secure new counsel and failed to respond to the motion; nor did

she otherwise communicate with the Court concerning any possible extension of her response deadline.

The Court now considers Plaintiff's motion based upon the record.

## III. Legal Standard

Summary judgment is proper where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A genuine dispute as to a material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The party seeking summary judgment has the burden of establishing that there is no genuine dispute as to any material fact. *See Celotex*, 477 U.S. at 323.

Plaintiff's motion for summary judgment [74] remains unopposed. But an "unopposed summary judgment motion is not a get-out-of-court free card." *Etheridge v. Hudson Group Retail, LLC*, No. 20-cv-07204, 2022 WL 15456490, at *5 (N.D. Ill. Oct. 27, 2022). A non-movant's failure to respond to a summary judgment motion does not "automatically result in judgment for the movant." *Raymond v. Ameritech Corp.*, 442 F.3d 600, 608 (7th Cir. 2006) (citation omitted).[2]

Summary judgment motions, "even when unopposed, must be carefully scrutinized to ensure that the record warrants the relief requested." *Crisafulli v. Garcia*, 380 F.Supp.2d 986, 987 (N.D. Ill. 2005). Plaintiff must still "show that

---

[2] When Plaintiff moved for summary judgment, Price remained represented by counsel, and Plaintiff thus was not required to serve Price with a LR 56.2 Notice.

summary judgment is proper given the undisputed facts." *Robinson v. Waterman*, 1 F.4th 480, 483 (7th Cir. 2021). Under Local Rule 56.1(e)(3), the Court may also deem admitted each material fact set out in Plaintiff's Statement of Facts due to Price's failure to respond. *See Smith v. Lamz*, 321 F.3d 680, 683 (7th Cir. 2003) ("We have consistently held that a failure to respond by the nonmovant as mandated by the local rules results in an admission.").

## IV. Discussion

Plaintiff US Foods moves for summary judgment on Counts V and VI against Defendant Price. The Court discusses each below.

### A. Breach of Guaranty

Under Delaware law, a "contract of guaranty is the promise to answer for the payment of some debt or for the performance of some obligation by another on the default of that third person who is liable in the first instance."[3] *Falco v. Alpha Affiliates, Inc.*, No. Civ.A. 97-494 MMS, 1997 WL 782011, at *5 (D. Del. Dec. 10, 1997) (citing *Jones Motor Co. v. Teledyne, Inc.*, 690 F. Supp. 310, 313 (D. Del. 1988)). The guaranty is a separate contract involving duties and responsibilities which are distinct from the basic contract to which it is collateral. *Id.* Thus, to prevail on a claim for a breach of guaranty, US Foods must prove the elements for breach of

---

[3] The Court applies the choice-of-law rules from its forum state to determine which state's substantive law will govern. *ECHO, Inc. v. Whitson Co.*, 52 F.3d 702, 706 (7th Cir. 1995). Illinois courts respect a contract's "choice-of-law clause as long as the contract is valid and the law chosen is not contrary" to Illinois' fundamental public policy. *Thomas v. Guardsmark*, 381 F.3d 701, 705 (7th Cir. 2004). Here, both the Agreement and Guaranty contain specific choice-of-law provisions stating the applicable law is that of Delaware. [76-1] Ex. 1 at 3, 4. There is no dispute the Agreement and Guaranty are valid, or that Delaware law remains consistent with Illinois' fundamental public policy, so the Court applies Delaware substantive law.

contract under Delaware law: (1) the existence of a contract; (2) the breach of an obligation imposed by that contract; and (3) resulting damages to Plaintiff. *Lorenzetti v. Hodges*, 2013 WL 592923, at *3 (Del. 2013).

Here, there is no dispute the Agreement and Guaranty exist and are valid. A true and accurate copy of the Agreement, submitted to the Court, plainly shows Price, acting as Turkey Leg's owner and principal, executed the Agreement with US Foods. [76-1] Ex. 1 at 2. In that same agreement, Defendant Price executed a personal guaranty, where she "personally and unconditionally" guaranteed Turkey Leg's payments of all amounts owed to US Foods. *Id.* at 4. Additionally, in the event of default, the Guaranty provided that US Foods could proceed directly against Price without first exhausting other remedies. *Id.* Price also agreed to pay 1.5% interest per month on all amounts owed under the Guaranty, and to pay all costs, expenses, and fees, including reasonable attorneys' fees and expenses, incurred by US Foods in enforcing the Guaranty. *Id.* Finally, there is no dispute US Foods performed all of its obligations under the Agreement. [76] ¶¶ 12–15.

There is also no dispute that Defendant Price failed to fulfill the obligations under the Guaranty. Price personally guaranteed payments of all amounts owed to US Foods, yet the undisputed facts show that neither Turkey Leg nor Price have paid the amounts due to US Foods. [76] ¶¶ 16, 19, 20, 23, 25.

Finally, US Foods has shown it suffered damages due to Price's failure to honor the guaranty. Turkey Leg failed to pay US Foods $82,548.07 for Produce sold under PACA pursuant to the Agreement. *Id.* ¶ 16. Turkey Leg also owes US Foods

$913,937.77 for non-PACA goods ordered under the Agreement. *Id.* ¶ 20. This includes $69,385.25 for proprietary products, specially ordered for Turkey Leg, which generally cannot be resold in the market. *Id.* ¶ 21. Finally, Turkey Leg has also accrued $343,787.61 in interest on its debts to US Foods. *Id.* ¶ 24. In total, Turkey Leg, and Price through the Guaranty, owes $1,340,273.45 to US Foods. *Id.* ¶ 25.

US Foods has submitted undisputed evidence satisfying all elements of its breach of guaranty claim against Defendant Price, and the Court grants summary judgment on the claim, awarding US Foods its requested relief of $1,340,273.45.

## B. Unlawful Dissipation of Trust Assets by an Officer

To make a claim under PACA, a plaintiff must show that: "(1) they qualify for protection under PACA as produce suppliers; (2) they provided the requisite notice of intent to preserve their interest in the statutory trust to the defendant; and (3) the defendant acted inconsistent with its duty to maintain the trust and ensure any assets held in trust were freely available to fulfill any outstanding obligations to trust beneficiaries." *Midwest Mktg. Co., Inc. v. Quality Produce Suppliers, Inc.*, 6 F.Supp.3d 843, 851 (N.D. Ill. 2013) (citing 7 U.S.C. § 499); *see also Anthony Marano Co. v. MS-Grand Bridgeview, Inc.*, No. 08 C 4244, 2010 WL 5419057, at *6 (N.D. Ill. Dec. 23, 2010).

A PACA trust arises upon a buyer's acceptance of goods from the seller and consists of a buyer's produce-related assets which are held for suppliers in the event of a business failure. *Anthony Marano Co.*, 2010 WL 5419057, at *6. Buyers must "maintain trust assets in a manner that such assets are freely available to satisfy

outstanding obligations to sellers" of PACA goods. *Id.* (citing 7 CFR 46.46(d)(1)). Failure to maintain the trust assets and make full prompt payment is unlawful under PACA. *Id.* (citing 7 U.S.C. § 499b(4)). Dissipation of trust assets is "unlawful and in violation" of PACA. *Id.* Dissipation is defined as "any act or failure to act which could result in the diversion of trust assets or which could prejudice or impair the ability of unpaid suppliers, sellers, or agents to recover money owed in connection with produce transactions." *Id.* (citing 7 CFR 46.46(a)(2)); *see also Epic Fresh Produce, LLC v. Olympic Wholesale Produce, Inc.*, No. 17-CV-8381, 2017 WL 6059971, at *8 (N.D. Ill. Dec. 7, 2017).

Here, there is no dispute that US Foods, a supplier of produce and a licensee under PACA, qualifies for protection under PACA. [76] ¶ 1. US Foods is a beneficiary of a PACA trust in the amount of $82,548.07, which Defendants have not paid. *Id.* ¶¶ 16, 17. US Foods also provided Defendants with requisite notice of its intent to preserve its trust interests. *Id.* ¶ 18. Neither Defendant responded to US Foods' PACA Notice, and neither Defendant made payments of the amounts due and owing. *Id.* ¶ 19. Thus, Turkey Leg would certainly be liable to US Foods under PACA.

But for US Foods' claim to stick against Price, Price must also be personally liable for the PACA violations. An individual is personally liable for PACA violations if they are in a position to oversee the proper application of PACA trust assets, and do not preserve the trust assets for the beneficiaries, breaching their fiduciary duty. *Patterson Frozen Foods v. Crown Foods Int'l*, 307 F.3d 666, 669 (7th Cir. 2002). To determine personal liability, a court must determine: "(1) whether an individual's

involvement with the company was sufficient to establish a legal responsibility; and (2) whether the individual breached a fiduciary duty to the PACA creditors." *Sato & Co., LLC v. S & M Produce, Inc.*, 859 F.Supp.2d 923, 927–28 (N.D. Ill. 2012). When evaluating an individual's involvement with the company, courts look to variety of factors, including whether an individual was a director, had a role in causing the breach of trust, was active in the management of the company, or signed for company accounts. *Id.* (collecting cases).

In *Midwest Marketing*, a defendant was held personally liable for dissipation of PACA trust assets where there was "no dispute" he was "actively involved in the operations and management" of the company as president, director, and owner of the corporation, and was in a position to control the PACA trust assets belonging to Plaintiffs." 6 F.Supp.3d at 851 (citing *Patterson Frozen Foods*, 307 F.3d at 669). Additionally, there was no dispute the defendant was a signatory on the defendant company's bank accounts "at all relevant times." *Id.* Thus, the defendant failed to preserve the trust assets and breached his fiduciary duty. *Id.*

Here, Price was the owner and principal of Turkey Leg and executed the agreement between Turkey Leg and US Foods. [76] ¶ 2. Price was also the personal guarantor of all amounts Turkey Leg owed to US Foods. *Id.* ¶ 7. Price was in a position of control over the PACA trust and failed to preserve the trust assets, breaching her fiduciary duty, and thus remains personally liable.

## V.    Conclusion

For the reasons explained above, this Court grants Plaintiff's motion for summary judgment [74] as to Defendant Price.

Dated: February 17, 2026                     Entered:

John Robert Blakey
United States District Judge